# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

REGINA H. GORDON, )
   *pro se* Plaintiff, )
)
v. ) Civil No. 3:16cv583 (MHL)
)
CITY OF EMPORIA, *et al.*, )
   Defendants. )
_____ )

## REPORT AND RECOMMENDATION

Plaintiff Regina H. Gordon ("Plaintiff"), proceeding *pro se*, brings this wrongful termination action against the following defendants: the City of Emporia ("Emporia"); Brian Thrower, City Manager of Emporia ("Thrower"); Nancy Turner, Supervisor of the Emporia Family Violence and Sexual Assault Unit ("Turner"); F. Woodrow Harris, Director of Probation Services for Emporia ("Harris"); and, Mary Person, Mayor of Emporia ("Person") (collectively, "Defendants"). Plaintiff alleges that Defendants discriminated against her by failing to accommodate her disability and unlawfully terminated her employment with Emporia in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"). Plaintiff seeks monetary damages for her wrongful discharge and for the pain, suffering and emotional distress that she has suffered as a result.

This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 7.) For the reasons set forth below, the Court recommends that Defendants' Motion to Dismiss be GRANTED.

# I. BACKGROUND

When resolving a motion for judgment on the pleadings, the Court construes the allegations in favor of the non-moving party. Fed. R. Civ. P. 12(c); *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 591 (4th Cir. 2004). Accordingly, for the purpose of resolving Defendants' Motion, the Court finds the relevant facts as follows.

On April 25, 2011, Plaintiff began working for the City of Emporia as a community service worker in the Family Violence Sexual Assault Unit. (Am. Compl. (ECF No. 3) at 2; Ex. 1 to Am. Compl.[1] (ECF No. 3-1 at 2) ("Job Description").) This full-time position required Plaintiff to work forty (40) hours per week and to provide emergency crisis services to domestic violence victims "on a 24 hour as needed basis." (Am. Compl. at 2; Job Description.) In November 2011, while walking on a sidewalk, Plaintiff was hit by a car and suffered injuries that required her to undergo two surgeries and continued medical treatment. (Am. Compl. at 2.)

According to Plaintiff, she met "no harsh working conditions" until March 2013. (Am. Compl. at 2.) At that time, Turner, Plaintiff's supervisor, asked Plaintiff to provide a doctor's note to substantiate her claim that she could not climb stairs. (Am. Compl. at 2.) Turner also denied Plaintiff's request for reimbursement for her mileage commuting to and from work. (Am. Compl. at 4; Ex. 2 to Am. Compl. (ECF No. 3-1 at 3) ("Turner Email").) Harris, Emporia's Director of Probation Services, had previously approved mileage reimbursement for Plaintiff, but Turner described any past repayments as "an oversight." (Am. Compl. at 4; Turner Email.)

---

[1] Plaintiff attached several unmarked attachments to her Amended Complaint. (ECF No. 3-1.) To avoid confusion, the Court will first refer to these attachments numerically, in the order in which Plaintiff filed them, assigning a parenthetical description to the specific attachment. Thereafter, the Court will refer to any relevant attachment by its parenthetical description.

On October 30, 2013, Plaintiff first sent a request and accompanying doctor's note to Turner, seeking a reduced work schedule of thirty-six (36) hours every other week.. (Am. Compl. at 3; Ex. 4 to Am. Compl. (ECF No. 3-1 at 10) ("Dr. Condecido's October 30, 2013 Letter").) Turner forwarded Plaintiff's request to Thrower, the city manager, who denied the request by letter dated December 3, 2013. (Am. Compl. at 3; Ex. 1 (ECF No. 9-1) ("Thrower's Letter") to Pl.'s Opp'n to Defs.' Mot. to Dismiss (ECF No. 9) ("Pl.'s Opp'n").) In his letter, Thrower informed Plaintiff that (1) she had exhausted her leave under the Family and Medical Leave Act ("FMLA"); (2) Emporia had received a letter from VCU Medical Center dated November 8, 2013, stating that Plaintiff could return to work with no restrictions; and, (3) if she did not provide additional documentation to support her request, she could be terminated by December 20, 2013. (Am. Compl. at 3; Thrower's Letter at 1-2.) Plaintiff resumed working forty hours per week on November 29, 2013 with another doctor's note stating that she could work full-time. (Am. Compl. at 3; Ex. 5 to Am. Compl. (ECF No. 3-1 at 11) ("Dr. Condecido's November 29, 2013 Letter").)

Around the same time in late 2013, Turner began requiring Plaintiff to call in when she arrived to or left a worksite, and she instructed Plaintiff not to consult with victims during her lunch break. (Am. Compl. at 2; Ex. 6 to Am. Compl. (ECF No. 3-1 at 12) ("November 26, 2013 List").) Turner did not impose these "new procedures" on anyone else. (Am. Compl. at 2.) After receiving the new procedures, Plaintiff met with Mayor Person and alleged that she had endured discrimination from Turner, Thrower and Harris. (Am. Compl. at 4.) Person asked Plaintiff for documentation of the alleged discrimination and encouraged her to file a complaint with the Equal Employment Opportunity Commission ("EEOC"). (Am. Compl. at 4.) Plaintiff

did not file with the EEOC at that time, and she heard nothing further from Person. (Am. Compl. at 4.)[2]

On February 25, 2015, Plaintiff submitted another note from her doctor requesting that she work part-time or "risk serious injury." (Am. Compl. at 3.)[3] Turner and Thrower granted Plaintiff's request, and she began working twenty-four (24) hours per week. (Am. Compl. at 3.) However, Turner and Thrower continued to harass Plaintiff about her work schedule until her termination. (Am. Compl. at 3.) On June 3, 2015, Plaintiff met with Turner and Thrower to discuss her reduced work schedule. (Am. Compl. at 3.) During the meeting, Thrower explained that Plaintiff had again exhausted her FMLA leave, but that "they would try to find a way to accommodate" Plaintiff. (Am. Compl. at 3.)

Evidently they did not find such a way, because, on July 28, 2015, Plaintiff filed a charge of discrimination with the EEOC, alleging that Emporia would no longer accommodate her request to work part-time. (Am. Compl. at 3, 5; Ex. 2 to Br. in Supp. of Defs.' Mot. to Dismiss (ECF No. 8-2) ("EEOC Charge").) The EEOC responded to Plaintiff by letter stating that Plaintiff's request placed "an 'undue hardship' on the City of Emporia." (Am. Compl. at 5.)[4]

On August 7, 2015, Emporia requested additional documentation about Plaintiff's estimated time of recovery, anticipated treatments and appointments, as well as other information relating to her "medical conditions as it relate[d] to [her] employment status . . . ." (Am. Compl.

---

[2] Aside from a March 24, 2014 meeting with Turner to discuss the potential for part-time work, Plaintiff makes no specific allegations from 2014. (Am. Compl. at 3.) Plaintiff asked Turner and Thrower if she could work part of the week from home — a request that they denied — but Plaintiff gives no indication of when she made this request. (Am. Compl. at 3.)

[3] Plaintiff did not attach this doctor's letter to her Amended Complaint.

[4] Plaintiff also did not attach the letter from the EEOC to her Amended Complaint.

4

at 4.) At that time, Emporia notified Plaintiff that failure to provide the requested information could result in denial of leave and disciplinary action, including termination. (Am. Compl. at 4.)

By letter dated August 24, 2015, Emporia terminated Plaintiff's employment. (Am. Compl. at 4; Ex. 10 to Am. Compl. (ECF No. 3-1 at 16) ("Letter of Termination").) In the Letter of Termination, Thrower explained that Plaintiff had exhausted her FMLA leave and had not been released to work a full-time forty-hour workweek by her doctor. (Am. Compl. at 4; Letter of Termination.) In June 2016, Plaintiff contacted Person asking whether she knew of Plaintiff's discharge. (Am. Compl. at 4.) Person stated that she knew that Plaintiff had exhausted her leave, and that she would look into the matter. (Am. Compl. at 4.) Plaintiff did not hear from Person again. (Am. Compl. at 4.)

Plaintiff commenced this action on July 13, 2016, and she filed her Amended Complaint on February 9, 2017. (ECF No. 1; Am. Compl.)

## II. STANDARD OF REVIEW

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's jurisdiction over the subject matter of the complaint. If a defendant contends that the "complaint simply fails to allege facts upon which subject matter jurisdiction can be based," all facts in the complaint are presumed true. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Alternatively, if the defendant argues that the jurisdictional facts in the complaint are untrue, the Court "may go beyond the allegations of the complaint . . . [to] determine if there are facts to support the jurisdictional allegations." *Kerns*, 585 F.3d at 192 (quoting *Adams*, 697 F.2d at 1219). Consideration of evidence outside of the pleadings does not necessarily convert the motion to one for summary judgment. *Evans v.*

5

*B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). In either case, the plaintiff bears the burden of proof to establish jurisdiction. *Richmond, Fredericksburg, & Potomac R. Co.*, 945 F.2d at 768.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570.

In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *Kensington Volunteer Fire Dept., Inc. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012) (additional citation omitted); *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (additional citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts

also look to the documents explicitly incorporated by reference into the complaint as well as those attached as exhibits to the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although typically constrained to the allegations within the complaint itself at this stage, the Court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in [the] complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (additional citations omitted).

Additionally, "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). To that end, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). At the same time, courts recognize that a plaintiff "can plead [her]self out of court by pleading facts that show that [s]he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (Posner, J.) (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009)).

## III. DISCUSSION

At the heart of her claim, Plaintiff alleges that Emporia wrongfully terminated her employment, discriminating against her disability. (Am. Compl. at 2, 4.) During her tenure with Emporia, Plaintiff requested various reduced-hour schedules to accommodate her medical condition. (Am. Compl. at 3.) At least as recently as February 2015, Emporia honored her request, allowing Plaintiff to work twenty-four hours per week. (Am. Compl. at 3.) However, by June 2015, Plaintiff had exhausted her FMLA leave. (Am. Compl. at 3.) By August 7, 2015,

Emporia sought additional information regarding Plaintiff's accommodation request and warned her that failure to provide the information could result in termination. (Am. Compl. at 4.) On August 24, 2015, Emporia terminated Plaintiff's employment, because she "ha[d] not been released to work on a full-time (40 hours per week) basis . . . and ha[d] exhausted [he]r 12 week FMLA leave entitlement." (Letter of Termination; Am. Compl. at 4.)

### A. Plaintiff's Claims Against the Individual Defendants

At the outset, Turner, Thrower, Harris and Person (collectively, the "Individual Defendants") seek dismissal arguing that the ADA does not hold individuals personally liable. (Br. in Supp. of Defs.' Mot. to Dismiss (ECF No. 8) ("Defs.' Br.") at 6-7.) Plaintiff did not specifically respond to this argument. (Pl.'s Opp'n.)

The ADA prohibits discrimination against individuals with disabilities by "covered entit[ies,]" including employers. 42 U.S.C. § 12112(a). The statute defines an "employer" as a "person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person." 42 U.S.C. § 12111(5)(A). In the Fourth Circuit, the ADA does not impose personal liability on individuals "making . . . employment decisions of a plainly delegable character." *Stephens v. Kay Mgmt. Co., Inc.*, 907 F. Supp. 169, 174 (E.D. Va. Dec. 7, 1995); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 471-72 (4th Cir. 1999). Such delegable decisions include refusing a request for reasonable accommodation and termination of employment. *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 n.1 (4th Cir. 1994) (holding that no individual liability lies under the ADEA for termination of employment); *Stephens*, 907 F. Supp. at 172-73 (extending *Birkbeck* to the ADA, which shares a common structure and purpose with the ADEA); *Pinnix v. Durham Cty. Gov't*, 2012 WL 4511248, at *2 (M.D.N.C.

Sept. 28, 2012) *report and recommendation adopted by* 2013 WL 100770 (M.D.N.C. Jan. 8, 2013) (finding no individual liability under the ADA for refusing request for reasonable accommodation).

Here, each allegation that Plaintiff asserts against the Individual Defendants is plainly delegable in nature. Harris had approved Plaintiff's mileage reimbursement in the past — an action that lacks any connection to Plaintiff's complaints of discrimination due to a disability. (Am. Compl. at 4.) Person met with Plaintiff to discuss her complaints of discriminatory treatment, and encouraged her to file a charge with the EEOC. (Am. Compl. at 4.) Turner and Thrower at times accommodated Plaintiff's request for reduced hours, and later refused her requests after she had exhausted her FMLA leave. (Am. Compl. at 3-4.) Thrower ultimately terminated Plaintiff's employment with Emporia. (Am. Compl. at 4; Letter of Termination.) Each of these individuals acted in their official capacities on behalf of Emporia. Consequently, the ADA permits Plaintiff to seek redress from Emporia, as her employer, but not from these individuals. Because Plaintiff fails to allege facts sufficient to state a plausible claim against the Individual Defendants, the Court recommends that the Defendants' Motion to Dismiss (ECF No. 7) be GRANTED pursuant to Rule 12(b)(6), and that Turner, Thrower, Harris and Person be dismissed with prejudice from this action.

### B. Plaintiff's Claims Against Emporia

Emporia seeks dismissal of Plaintiff's claims against it on three fronts. First, Emporia argues that Plaintiff's allegations relating back to employment actions in 2013 are time-barred. (Defs.' Br. at 7-8.) Second, according to Emporia, Plaintiff failed to exhaust her administrative remedies for her wrongful termination claim. (Defs.' Br. at 9-10.) Finally, Emporia asserts that

the ADA does not protect Plaintiff's request for a part-time work schedule, because she does not constitute a qualified individual under the Act. (Defs.' Br. at 10-13.) The Court addresses each of these arguments in turn.

### 1. Plaintiff's claims relating to her employment in 2013 are time-barred.

Three of Plaintiff's allegations arise from actions in 2013. In March 2013, Emporia began denying Plaintiff's mileage requests, for which the city had previously reimbursed her. (Am. Compl. at 4.) In October 2013, Plaintiff first requested reduced hours to accommodate her medical condition, and Emporia denied the request. (Am. Compl. at 3.) Finally, in December 2013, Emporia instituted "new procedures" specifically for Plaintiff, requiring her to call Turner each time that she arrived to or left a worksite. (Am. Compl. at 2; November 26, 2013 List.) On July 28, 2015, Plaintiff filed a charge of discrimination with the EEOC. (Am. Compl. at 5; EEOC Charge.) In the charge, Plaintiff complained about the requirement that she call Turner, but she did not mention her mileage or the denial of her reduced hours request in 2013. (EEOC Charge.)

Emporia argues that time limits in the ADA preclude Plaintiff from challenging these actions now. (Defs.' Br. at 8.) Specifically, because Plaintiff did not file a charge with the EEOC within 300 days of this conduct, her claims from 2013 are time-barred. (Defs.' Br. at 8-9.) Plaintiff responds by acknowledging that "some of the filing dates were past due," but asking the Court for resolution of the "unfair conditions" that she faced during her tenure with Emporia. (Pl.'s Opp'n at 2.)

Under the ADA, an employee must first initiate her charge of unlawful employment practices with the EEOC within 180 days of the alleged unlawful practices. 42 U.S.C. §§ 2000e-

5(e)(1), 12117(a). However, in states that prohibit the alleged unlawful employment practices — and establish a state or local agency for claimants to seek relief from such practices — an employee must file her charge within 300 days of the aggrieved conduct. 42 U.S.C. § 2000e-5(e)(1). The EEOC recognizes such state and local agencies as "deferral agencies" and, when a claimant files a charge with the EEOC in a deferral state, the EEOC refers the charge to the corresponding state deferral agency. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439-40 (4th Cir. 1998). Virginia is a deferral state, and thus Plaintiff had to file her charge within 300 days after Emporia's alleged unlawful action. *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 (4th Cir. 2002); *Tinsley*, 155 F.3d at 440.

Plaintiff filed a charge of discrimination with the EEOC and the Virginia Division of Human Rights — Virginia's deferral agency — on July 28, 2015. (Am. Compl. at 5; EEOC Charge.) Under the statutory time period, the oldest unlawful employment practice that Plaintiff could have brought in that charge would have occurred no earlier than October 1, 2014 — 300 days before her filing date. Any action by Emporia in 2013 that Plaintiff included in her EEOC charge thus fails for untimeliness. Consequently, the Court finds that Plaintiff's complaints from 2013 are time-barred, and recommends that they be dismissed with prejudice.

### 2. Plaintiff exhausted her administrative remedies regarding her wrongful termination claim.

Next, Emporia argues that Plaintiff's wrongful termination claim must fail, because Plaintiff did not exhaust her administrative remedies for that claim. (Defs.' Br. at 9-10.) Plaintiff again seeks relief despite any procedural deficiencies. (Pl.'s Opp'n at 2.)

Under the ADA, a claimant must exhaust her administrative remedies with the EEOC, or its state counterpart, before filing suit in federal court. 42 U.S.C. § 2000e-5(f)(1); *Sydnor v.*

11

*Fairfax Cty.*, 681 F.3d 591, 593 (4th Cir. 2012). This administrative process serves two purposes. First, the EEOC charge allows many claimants to obtain resolution without protracted and expensive litigation. *Sydnor*, 681 F.3d at 593. Second, and most importantly in this case, the charge filed with the EEOC puts the employer on notice of the alleged ADA violations. *Id.*

If the dispute does not reach a resolution at the administrative level, and the employee files suit, "'the scope of the plaintiff's right to file a federal lawsuit is determined by' the contents of the charge filed with the . . . EEOC." *Jones v. Southpeak Interactive Corp.*, 777 F.3d 658, 669 (4th Cir. 2012) [hereinafter *Southpeak Interactive*] (quoting *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) [hereinafter *Calvert Grp.*]). While the administrative charge defines the scope of the plaintiff's federal lawsuit, it "does not strictly limit" it. *Southpeak Interactive*, 777 F.3d at 669 (quoting *Bryant v. Bell Atl. Md., Inc.*, 299 F.3d 124, 132 (4th Cir. 2002)). Instead, the touchstone for exhaustion of administrative remedies lies in whether the "administrative and judicial claims are 'reasonably related.'" *Sydnor*, 681 F.3d at 595 (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)). Where the two claims involve the same type of discrimination, "the same place of work and the same actor[s]" — and not "shifting sets and a rotating cast of characters" — courts find the claims reasonably related such that the employer had sufficient notice of the allegations against it. *Id.* at 594-96 (finding the plaintiff's EEOC charge and judicial complaint reasonably related, because they shared the same type of discrimination, description of disability, place of work and actor, despite different proposed accommodations). Conversely, where the EEOC charge alleges one form of discrimination (*e.g.*, race), and the formal lawsuit alleges another (*e.g.*, gender), the plaintiff fails the exhaustion requirement. *Calvert Grp.*, 551 F.3d at 300.

Emporia argues that Plaintiff did not exhaust her administrative remedies regarding her termination claim, because she did not file a second charge of discrimination with the EEOC after her termination. (Defs.' Br. at 9-10.) However, the Fourth Circuit has held otherwise. *Calvert Grp.*, 551 F.3d at 301-04; *see also Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992) (holding that once claimant properly filed an EEOC charge for discrimination, she need not file a separate charge for retaliation that relates to her initial charge); *Plunkett v. Potter*, 751 F. Supp. 2d 807, 811-12 (D. Md. Nov. 18, 2010) (same). In *Jones v. Calvert Group, Ltd.*, the plaintiff filed a retaliation charge with Maryland's state deferral agency, alleging differential treatment from her employer after she had previously filed a discrimination charge against it. 551 F.3d at 299. Shortly after the agency issued her right-to-sue letter, Jones was terminated. *Id.* She filed suit in federal court challenging her discharge without filing another administrative charge. *Id.* Writing for the Fourth Circuit, Judge Traxler found that Jones' termination reasonably related to the allegations in her retaliation charge. *Id.* at 304. The EEOC charge alleged "a pattern of [ongoing] conduct," and the Fourth Circuit reasoned that Jones' retaliatory termination claim constituted "merely the predictable culmination" of that pattern. *Id.*

Similarly, in *Plunkett v. Potter*, the plaintiff filed her discrimination and retaliation charge with the EEOC, then later filed a complaint in federal court. 751 F. Supp. 2d at 809-10. In that case, Plunkett had sustained injuries in a car accident, and she sought — and inconsistently received — accommodations limiting her duties due to her disability. *Id.* at 809. After filing suit, Plunkett was terminated and moved to amend her complaint to include a retaliation claim for her termination. *Id.* at 810. The *Plunkett* court rejected the defense's argument that the plaintiff had to first file a separate EEOC charge related to her termination

before she could pursue the claim in court. *Id.* at 812 (citing *Calvert Grp.*, 551 F.3d at 303; *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992)) (additional citations omitted).

Here, like Jones and Plunkett, Plaintiff filed her EEOC charge before her ultimate termination. (Am. Compl. at 4-5; EEOC Charge.) The charge involved the same workplace and same actors — Turner and Thrower — as her claim that Emporia fired her, because she requested reduced hours to accommodate her disability. (Am. Compl. at 4; EEOC Charge;) *Sydnor*, 681 F.3d at 594-96. Indeed, her EEOC charge complained of (1) having to call Turner upon her arrival to work when other employees had no such requirement; (2) enduring harassment and questioning about her ongoing medical appointments; and, (3) learning that "if [she could] not work full time, 40 hours, [then she would] be discharged." (EEOC Charge.) Plaintiff asserted that her doctor "mandated" that she work part-time — and though it had yet to happen — she contemplated that Emporia would terminate her if she did not resume a full-time schedule. (EEOC Charge.)

In her lawsuit, like Plunkett, Plaintiff alleges that Emporia at times allowed her to work reduced hours to accommodate her accident-related injuries, while at other times refusing her requests. (Am. Compl. at 3-4); *Plunkett*, 751 F. Supp. 2d at 809. The Amended Complaint alleges that Emporia terminated her employment, because she had exhausted her FMLA leave and, per her doctor's orders, she could not work forty (40) hours per week. (Am. Compl. at 4.) As in *Calvert Group*, Plaintiff's termination stood as the mere "predictable culmination" of a pattern of conduct, in which Emporia allegedly treated Plaintiff differently and denied her accommodation requests because of her disability. *Calvert*, 551 F.3d at 304. As it relates to her termination, the Amended Complaint reasonably relates to Plaintiff's EEOC charge. Thus,

14

Plaintiff has exhausted her administrative remedies regarding this claim.

### 3. Plaintiff is not a "qualified individual" entitled to relief under the ADA.

Finally, the Court must consider whether Plaintiff states a plausible claim that Emporia failed to accommodate her disability under the ADA and ultimately discharged her because of it. Emporia argues that asking to work reduced hours did not equate to a request for reasonable accommodation. (Defs.' Br. at 11-13.) Moreover, according to Emporia, Plaintiff could not perform the essential duties of her position, and thus she does not constitute a qualified individual entitled to relief under the ADA. (Defs.' Br. at 10-13.) Plaintiff asks the Court to consider the totality of the circumstances and deny the Motion to Dismiss. (Pl.'s Opp'n at 2.)

To state a *prima facie* case for failure to accommodate, Plaintiff must sufficiently allege that: (1) she was an individual who had a disability; (2) that Emporia had notice of her disability; (3) that with reasonable accommodation she should perform the essential functions of her job; and, (4) that Emporia refused to make such an accommodation. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001); *Jones v. HCA*, 16 F. Supp. 3d 622, 631 (E.D.Va. Apr. 21, 2014) [hereinafter *HCA*]. A *prima facie* showing for wrongful discharge under the ADA requires similar factual allegations: (1) that Plaintiff fit within the ADA's protected class; (2) that she was discharged; (3) that, at the time of discharge, she performed her job at a level that met her employer's legitimate expectations; and, (4) that the circumstances of her discharge raise a reasonable inference of unlawful discrimination. *Nartey-Nolan v. Siemens Medical Sols. USA, Inc.*, 91 F. Supp. 3d 770, 773 (E.D.N.C. Feb. 16, 2015) (quoting *Haulbrook v. Michelin N. Am.*, 252 F3d 696, 702 (4th Cir. 2001)). Thus, both of these claims require Plaintiff to demonstrate that she is a qualified individual with a disability. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337,

344-46 (4th Cir. 2013) (failure to accommodate); *HCA*, 16 F. Supp. 3d at 632 (wrongful discharge).

The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Reasonable accommodations may include, in relevant part, "job restructuring [and] part-time or modified work schedules." § 12111(9). Moreover, "if an employer has prepared a written description [of the job] before advertising or interviewing applicants . . ." the statute treats the description as "evidence of the essential functions of the job." § 12111(8).

While a part-time work schedule *may* qualify as reasonable accommodation in a given circumstance, the Fourth Circuit has found that "a regular and reliable level of attendance is a necessary element of most jobs." *Tyndall v. Nat'l Educ. Ctrs., Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994); *see also Works v. Berryhill*, 686 F. App'x 192, 196 (4th Cir. 2017) (a qualified individual must "possess the skills necessary for the position, but also must . . . demonstrate these skills by coming to work on a regular basis") (quoting *Tyndall*, 31 F.3d at 213 (internal quotation marks omitted)). Indeed, where "an employee cannot meet the attendance requirements of the job at issue," courts do not consider the employee a "qualified individual" under the ADA. *Tyndall*, 31 F.3d at 213 (additional citations omitted).

Plaintiff attached the job description for her position as a community service worker to her Amended Complaint. (Job Description.) The description makes clear that the job constituted a "full time (40 hours per week) salaried position" that required her to provide emergency crisis services around the clock, when needed. (Job Description.) Throughout the Amended

Complaint, Plaintiff does not dispute the full-time nature of her work. (Am. Compl. at 3-5.) Moreover, she confirms that Emporia discharged her because she had exhausted her FMLA leave and had not received authorization from her doctor to resume a full-time schedule.[5] (Am. Compl. at 4; Letter of Termination.) In sum, Plaintiff's job demanded full-time work, and she could not fulfill the required hours. Thus, she could not perform the essential duties of her job and is not a "qualified individual" who can seek protections under the ADA. Given the statutory shortfalls of the factual allegations in the Amended Complaint, Plaintiff fails to state a plausible claim for relief for either failure to accommodate or wrongful discharge. Accordingly, the Court recommends that Defendants' Motion to Dismiss be granted pursuant to Rule 12(b)(6), and this action be dismissed with prejudice against Emporia.

## IV. CONCLUSION

Because Plaintiff fails to allege sufficient facts to state a plausible claim of discrimination or wrongful discharge in violation of the ADA, the Court recommends that Defendants' Motion to Dismiss (ECF No. 7) be GRANTED, and that Plaintiff's Amended Complaint (ECF No. 3) be DISMISSED WITH PREJUDICE. The Clerk is directed to file this Report and Recommendation electronically and send a copy to *pro se* Plaintiff at her address of record, to all counsel of record and to United States District Judge M. Hannah Lauck.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within**

---

[5] Plaintiff once asked to work partially from home. (Am. Compl. at 3.) However, because Plaintiff alleges that she could not work full-time (whether in the office or at home), she could not perform the essential duties of her position. (Am. Compl. at 3-5.) Thus, Plaintiff's request to tele-commute has no further impact on the Court's analysis.

fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: December 18, 2017